UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROBERT GATTI, et al.,           )      CASE NO. 4:16CV1307
                                )
        Plaintiffs,             )
                                )      MAGISTRATE JUDGE
                                )      GEORGE J. LIMBERT
        v.                      )
                                )
RANDY L. SMITH, et al.,         )      MEMORANDUM OPINION & ORDER
                                )
        Defendants.             )


        The above case is before the Court on a motion for summary judgment filed by Defendants

Randy L. Smith ("Defendant Smith") and the Office of the Trumbull County Engineer ("Defendant

Engineer's Office")(collectively "Defendants").  ECF Dkt. #56.  For the following reasons, this

Court GRANTS Defendants' motion for summary judgment and DISMISSES in its entirety the

second amended complaint of Plaintiffs Robert Gatti ("Plaintiff Gatti"), Christopher Charnas

("Plaintiff Charnas"), Kendall Lee Stauffer ("Plaintiff Stauffer"), Timothy Davis ("Plaintiff Davis"),

and Jason Loomis ("Plaintiff Loomis") WITH PREJUDICE.  *Id.*

## I.      FACTS AND PROCEDURAL HISTORY

        On June 7, 2016, Plaintiffs filed a second amended complaint alleging that at all times

material to the complaint, they were employees of Defendant Engineer's Office.  ECF Dkt. #8 at

2.  Plaintiffs averred that they were suing Defendant Smith in his individual and official

capacities as the County Engineer of Trumbull County, Ohio.  *Id.* at 3.  They alleged that

Defendant Smith was the chief policy-maker for Defendant Engineer's Office and acting

within the scope of his employment at all times relevant to the complaint.  *Id.*

        In Count One of the second amended complaint, Plaintiffs sue Defendant Smith in his

individual capacity, alleging that he, acting under the color of state law, initiated and imposedthe

following adverse actions against them based upon his open animus toward those employees who supported or associated with his political opponents and/or those who engaged in union activities:

a.   On the job harassment (Stauffer, Davis, Loomis, Gatti),

b.   Termination (Stauffer, Charnas),

c.   Unwarranted civil lawsuit (Gatti),

d.   Threats relating to employment (Gatti, Stauffer),

e.   Unwarranted disciplinary actions (Gatti, Davis, Stauffer);

f.   Discriminatory job assignments (Gatti, Stauffer, Charnas)

g.   Posting a list of purported union sympathizers in the workplace and taking adverse employment actions against each person named on that list (All Plaintiffs)

h.   Generally disparate job treatment (All Plaintiffs).

ECF Dkt. #8 at 4. Plaintiffs allege that Defendant Smith's actions had a chilling effect on their clearly established rights of freedom of speech, freedom of association, and equal protection under the law. *Id*. at 4-5.

In Count Two of their second amended complaint, Plaintiffs allege that Defendant Engineer's Office is liable because Defendant Smith was its chief policy-maker and consistently attacked the First Amendment rights of Plaintiffs, which constitutes the official policy and practice of Defendant Engineer's Office. ECF Dkt. #8 at 6.

Each Plaintiff requests compensatory damages in the amount of $1.5 million, punitive damages of $1.5 million, attorney fees, and any other relief deemed just. ECF Dkt. #8 at 6-7.

On October 25, 2016, the parties consented to the undersigned's jurisdiction. ECF Dkt.#24.

On October 2, 2017, Defendants filed the instant motion for summary judgment on all of Plaintiffs' claims. ECF Dkt. #56. On November 1, 2017, Plaintiffs filed a response to the motion for summary judgment. ECF Dkt. #59. On November 16, 2017, Defendants filed a reply brief. ECF Dkt. #61.

II.    **SUMMARY JUDGMENT**

    A.    **STANDARD OF REVIEW**

        Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. *56(a);* see also Fed. R. Civ. P. 56, Advisory Committee Notes ("The standard for granting summary judgment remains unchanged" despite 2010 amendments to Rule 56). Rule 56(c)(1) outlines the procedures for supporting or opposing a motion for summary judgment, stating that:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Rule 56(c)(3) provides that the Court need only consider cited materials in determining a motion for summary judgment, although the Court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

        The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co..,* 475 U.S. at 587. If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. See Fed.R.Civ.P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex,* 477 U.S. at 322. A mere scintilla of evidence is not enough; the evidence must be such that a reasonable jury could find for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court may grant

summary judgment "only if the motion and supporting materials – including the facts considered undisputed under subdivision (e)(2)– show that the movant is entitled to it." Fed. R. Civ. P. 56(e), Advisory Committee Note, 2010 Amendment.

## B.    LAW AND ANALYSIS

Plaintiffs assert that they were subjected to adverse employment actions by Defendant Smith in retaliation for their political support of his opponent and their involvement in the union. ECF Dkt. #59 at 5. In order to succeed on a First Amendment retaliation claim, each Plaintiff in the instant case must present a prima facie case of retaliation by showing: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a casual connection between elements one and two – that is, the adverse action was motivated at least in part by his protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012), quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). If a plaintiff establishes a prima facie case, the burden then shifts to the employer to show "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Benison v. Ross,* 765 F.3d 649, 658 (6th Cir. 2014), quoting *Dye*, 702 F.3d at 294 (*quoting Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir.2010)) (internal quotation marks omitted). After this burden shift, the Court should grant summary judgment if, "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Benison,* 765 F.3d at 658, quoting *Dye*, 702 F.3d at 294-295.

In the instant case, Defendants apparently concede that Plaintiffs meet the first element of the prima facie case as they do not present any argument as to whether Plaintiffs were engaged in political support or association or such conduct through union activity. Rather, Defendants focus on the latter two elements, contending that Plaintiffs fail to establish sufficiently adverse employment actions and they fail to provide any evidence that the alleged retaliatory acts were causally connected to their protected activities. ECF Dkt. #56 at 6-30.

**1.** **Supervisors' Statements about "Hit List" and other matters**

Plaintiffs allege in their memorandum in opposition to Defendants' motion for summary judgment that some of their supervisors, specifically David Peterson, Bill Sparks, Tom Klejka, Tim Monroe, James Dicenso, and Marty Patrick, told them that Defendant Smith created a "hit list" of employees that he wanted to "get" because they were union-affiliated or because they supported his political opponent directly or through their union affiliation. ECF Dkt. #59 at 6-7, 10-12, 15, 22-24. Plaintiff Charnas testified that: Mr. Klejka and Mr. Dicenso told him that he was number three on Defendant Smith's "hit list;" Mr. Patrick called him at home to warn him that he was on the "hit list;" and Mssrs. Klejka, Sparks and Monroe told him that he should watch his back. ECF Dkt. #59 at 10, citing ECF Dkt. #44-1 at 40-42. Plaintiff Stauffer testified that Mr. Dicenso told him that he was assigned to an isolated job at the Cortland garage to prevent him from having access to other union members. ECF Dkt. #59 at 11-12, citing ECF Dkt. #48-1 at 17-19. Plaintiff Davis testified that Mr. Dicenso told him to watch himself because "they had it in for them;" Mr. Monroe told him to watch himself and that he did not understand why Plaintiff Davis was being targeted because he was a good worker; and Mr. Ford warned Plaintiff Davis to watch himself. ECF Dkt. #59 at 15, citing ECF Dkt. #45-1 at 113-114; and Plaintiff Loomis testified that Mr. Peterson and Mr. Sparks told him about the "hit list" and that his name was on the list because he was "union." *Id.* at 7, citing ECF Dkt. #47-1 at 41, 71.

Defendants assert that these statements are inadmissible hearsay under Rule 801(d)(2)(D) of the Federal Rules of Evidence. ECF Dkt. #61 at 1-4. They contend that while Rule 801(d)(2)(D) does exclude as hearsay "a statement [that] was made by the party's agent or employee on a matter within the scope of that relationship and while it existed, " the statements of the supervisors presented by Plaintiffs in this case do not meet the Rule because more is required beyond the mere fact that the supervisors were managers in order to allow their statements to act as vicarious admissions of Defendant Smith. *Id*., citing *Hill v. Speigel, Inc*., 708 F.2d 223, 237 (6th Cir. 1983). Defendants contend that the Sixth Circuit requires that in order to meet Rule 801(d)(2)(D), it must be shown that the content of the statements concerned a matter within the scope of the manager's agency. *Id.* Defendants submit that Plaintiffs cannot

establish that the supervisors' statements concerning Defendant Smith's alleged intentions regarding personnel issues, unions and a "hit list" were within the scope of their job duties and responsibilities. ECF Dkt. #61 at 3. Defendants point out that in each of their affidavits, Mssrs. Peterson, Sparks, Klejka, Monroe, and Patrick attested that they were Highway Supervisors at the time that the statements were allegedly made and their jobs and duties did not involve personnel, union, or labor issues or discussing those issues with Defendant Smith or any individuals in positions above theirs. *Id*. at 3, citing ECF Dkt. #61-1 through ECF Dkt. #61-7. As to Mr. Ford, he attests in his affidavit that he was not a supervisor but was in a labor position while employed with Defendant Engineer's Office and he was not in any position that involved speaking with Defendant Smith about union issues, personnel issues, or individual employees. ECF Dkt. #61-6. Defendants cite to Defendant Smith's affidavit as support that Mr. Dicenso was also a Highway Supervisor at the time that he made the alleged statements concerning a "hit" list and he had no involvement in personnel or union issues and his position was not one in which he spoke to Defendant Smith about such issues or about individual employees. ECF Dkt. #61 at 3, citing ECF Dkt. #61-5 at 2-3.

Rule 801 (d)(2)(D) provides in relevant part that a statement is not hearsay if it is "offered against an opposing party and ...was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evi. 801(d)(2)(D). The declarant of the statement need not be directly involved in the adverse employment action, but the statement must concern a matter within the scope of the declarant's employment. *Back v. Nestle USA, Inc*., 684 F.3d 571, 577 (6th Cir. 2012), citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 275-276 (6th Cir. 2003).

The Court finds that in the instant case, Plaintiffs fail to establish that the statements allegedly made by Mssrs. Peterson, Sparks, Klejka, Monroe, and Patrick concerned matters that were within the scope of their employment as Highway Supervisors. Defendants attach the affidavits of each of the named supervisors and assert that the their duties did not include personnel matters or union issues, or discussing such matters or individual employees with Defendant Smith. ECF Dkt. #61-1 through 61-7. In each of their affidavits, Mssrs. Peterson,

Sparks, Klejka, Monroe and Patrick attest that they were Highway Supervisors at the time that the alleged statements were made and their duties as Highway Supervisors did not include personnel matters or union issues, or discussing such issues or individual employees with Defendant Smith. *Id*. Defendant Smith also filed an affidavit outlining the duties of the Highway Supervisors as well, attesting that the duties of Highway Supervisors did not include personnel or union matters or discussing those matters or individual employees with him. ECF Dkt. #61-5 at 1-2. Defendant Smith also attested that Mr. DiCenso was a Highway Supervisor at the time that Plaintiffs alleged he made his statements to them and his scope of employment in that capacity did not include union or personnel matters or discussing those matters or individual employees with Defendant Smith. *Id*.

Plaintiffs fail to meet their reciprocal burden on summary judgment of showing or creating a genuine issue of material fact that the responsibilities or duties of Mssrs. Peterson, Sparks, Klejka, Monroe, and Patrick as Highway Supervisors included matters concerning personnel issues and union matters, or of discussing these matters and individual employees with Defendant Smith. Accordingly, the Court finds that the statements allegedly made by Mssrs. Peterson, Sparks, Klejka, Monroe, Dicenso and Patrick are inadmissible hearsay under Rule 801(d)(2)(D) of the Federal Rules of Evidence. The Court will address Mr. Ford's statements in the body of this Memorandum Opinion & Order.

**2.**     **Text Message and Phone Numbers Posted in Break Room**

In the second amended complaint, Plaintiffs also aver that a list was posted of purported union sympathizers on the break room bulletin board along with a copy of a mass text message that Plaintiff Stauffer sent out concerning a lawsuit he filed to have Defendant Smith removed from office. ECF Dkt. #8 at 4; ECF Dkt. #59 at 13. They assert that the text message was posted on the bulletin board, along with some of the phone numbers to which it was sent. ECF Dkt. #59 at 13. They contend that this was an act of intimidation in order to prevent union members from speaking to Plaintiff Stauffer, who was the Chief Steward. ECF #59 at 13. Plaintiffs also assert that another attempted intimidation occurred shortly after this posting when they discovered that Mr. White, a private investigator from Columbus, Ohio, submitted a public

records request for the personnel files of the employees who were named in the posting on the bulletin board. *Id.*

Defendants assert in their motion for summary judgment that Plaintiffs cannot establish who posted the list of union sympathizers or the mass text message with phone numbers in the break room and they thus cannot establish that Defendant Smith arranged, approved or was otherwise involved in the posting or the personnel records requests. ECF Dkt. #56 at 17-19. Defendants further assert that no adverse action emanated from this posting as no negative consequences came from the posting or the records request, the posting was taken down, and Plaintiff Gatti testified that no one ever came to pick up the public records request and he had no evidence that the request came from Defendant Smith or his administration. ECF Dkt. #46-1 at 58-61.

Based upon the record, the Court agrees that Plaintiffs have not met their reciprocal burden on summary judgment of showing that the posting of the list in the break room or the public records request were sufficiently adverse or that Defendant Smith or his office was involved in the posting in the break room or the public records request.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims of First Amendment violations and retaliation resulting from the postings on the bulletin board in the break room or the public records requests. ECF Dkt. #56.

### 3. Plaintiff Gatti's Alleged Employment Actions

Defendants also move for summary judgment on Plaintiff Gatti's claims against them, asserting that he cannot establish a prima facie case of First Amendment retaliation because some of the employment actions that he alleges were taken against him did not constitute "adverse employment actions" and he cannot otherwise show the required causal connection between any of the employment actions and his union activity and political support of Defendant Smith's opponent. ECF Dkt. #56 at 6-12. They note Plaintiff Gatti's deposition testimony of his higher positions in the union, his support of Defendant Smith's political opponent, and his support for sister-in-law in another race. ECF Dkt. #59 at 17. Plaintiff Gatti is currently an equipment operator for Defendants. *Id.*

8

In his brief in opposition to the motion for summary judgment and in his deposition testimony, Plaintiff Gatti testified that he had to perform "menial and unpleasant job duties," like having to weed-whack an entire facility yard and being placed on a piece of unprotected equipment on a bitterly cold day while less senior employees used equipment that had cabs and heaters. ECF Dkt. #59 at 17-19, citing ECF Dkt. #46-1 at 7-8. He also testified that after he was asked to work overtime and when he declined because he had to go to a doctor's appointment, he was removed from the machine he was on and replaced by a seasonal worker, and he had to perform laborer work for the rest of the day. *Id*. at 8. He further testified to at least four occasions when he was called by supervisors to see if he could work overtime and when he declined after regular hours work because he had a doctor's appointment, he was told that he had to bring in a doctor's excuse and on one occasion, someone from the Trumbull County Engineer's Office called one of his doctors. *Id*. at 8-15. He also complained of supervisors calling him late at night and in the early morning hours to see if he wanted to work overtime even though they know he cannot do so because he takes medication at night so that he cannot work after 7:00 p.m. *Id*. at 17, 23-24.

The Court questions whether Plaintiff Gatti has shown that these actions are adverse employment actions that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Ctr. For Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007) (internal quotation marks omitted); *see also Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). This standard is "distinct" from the adverse action standard used in traditional employment discrimination claims, and therefore this Court must "tailor [its] analysis under the adverse action prong to the circumstances of this specific retaliation claim." *Dye*, 702 F.3d at 303–04 (internal quotation marks omitted). Weed-whacking a facility's grounds, having to use a piece of machinery without a covering or heat on a cold day, being asked to work overtime but not being required to do so, and requiring Plaintiff Gatti to produce a doctor's excuse do not rise to the level of "adverse employment actions" that would chill or silence a reasonable person from engaging in future First Amendment activities. Further, Plaintiff Gatti testified that he had no evidence to

show that Defendant Smith was involved in or approved these job actions, but he "knew" that Defendant Smith had to approve such actions. *Id*. at 18-19. Without more, the undersigned questions whether such actions are those that were sufficiently adverse to chill or silence a reasonable person from engaging in future First Amendment activities.

Further, the Court agrees with Defendants that Plaintiff Gatti has failed to show that even if these actions were sufficiently adverse, they were motivated at least in part by his union activity and/or political conduct. Without the use of the alleged "hit list" and the statements allegedly made by the supervisors that the Court ruled were inadmissible hearsay, Plaintiff Gatti has not presented any support establishing a causal connection between his protected activities and the above-described tasks that he alleged were adverse.

For these reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff Gatti's claims of being subjected to "menial and unpleasant job duties," such as weed-whacking, having to work on a piece of unprotected and uncovered equipment on a bitterly cold day, being called and asked if he could work overtime, called in the early morning hours to see if he could work overtime, being asked to provide a medical excuse when he stated that he could not work overtime, and calling his doctor's office when he indicated that he could not work overtime. ECF Dkt. #56.

Plaintiff Gatti also complains that he was subjected to two serious disciplinary actions because of his union activities and political support of Defendant Smith's opponent. ECF Dkt. #46–1 at 23-40; ECF Dkt. #59 at 17-19. He cites to a ten-day suspension for allegedly being insubordinate and a state court civil lawsuit by Defendant Smith for reimbursement of health insurance premiums. *Id.* at 17-18, citing ECF Dkt. #46-1 at 77-78. Plaintiff Gatti explained at his deposition that he was interviewed in a departmental investigation concerning the forwarding of a videotape to the EPA which showed Defendant Engineer Office employees performing work on the grounds with a "vac" truck. ECF Dkt. #46-1 at 64-66. The investigators at this interview asked Plaintiff Gatti to answer questions and when he asked if he could see the questions that they wanted to ask ahead of time, he was told no and he thereafter refused to answer the questions. *Id.* at 67-68. One of the investigators went to get Herb Laukhart, Director of Finance

and Personnel for Defendant Engineer's Office, and Mr. Laukhart told Plaintiff Gatti that he was giving him a direct order to answer the investigator's questions. *Id.* at 68. Plaintiff Gatti testified that this direct order sounded like a threat to him and he refused to answer the questions. *Id.* Plaintiff Gatti also indicated at his deposition that a dispute arose during this interview as to who his union representative would be because he did not want the steward in training who was assigned to him and instead wanted a steward of his choice. *Id.* at 70. Mr. Laukhart told Plaintiff Gatti that the steward in training was his representative and he was giving him a direct order to answer the questions. *Id.* at 72-73. Plaintiff Gatti testified that he still did not answer the questions and thereafter had to attend a pre-disciplinary hearing on allegations that he was insubordinate. *Id.* at 73. He also noted that he had answered questions concerning this issue two previous times. *Id.*

Plaintiff Gatti admitted at his deposition that no other employees were given a list of the questions that were going to be asked before the interview, no other employees refused to answer questions when given an order by their superior to do so, and nothing in the collective bargaining agreement provided that a unit member gets a union representative of his choice. ECF Dkt. #46-1 at 69, 80-81. Plaintiff Gatti also testified as to the accuracy of the transcript of the pre-disciplinary hearing and a letter he received from Defendant Smith which notified him of the hearing officer's findings of insubordination with a recommendation of a ten-day suspension without pay. ECF Dkt. #46-1 at 77-78. Plaintiff Gatti admitted that he did not lose any pay as the parties and the union resolved the ten-day suspension without pay to a ten-day working suspension in lieu of going to arbitration. *Id.* Plaintiff Gatti complained that he had to pay his attorney "because the union wasn't standing up to the fight here." *Id.* at 78. One of the other employees in the training video was fired and another resigned. *Id.* at 79-80.

Defendants move for summary judgment on this claim, asserting that the disciplinary hearing and the suspension were not adverse employment actions and Plaintiff Gatti has not otherwise shown a casual connection between his union and political activities and the actions taken that resulted in the suspension. ECF Dkt. #56 at 9-11.

The Court GRANTS summary judgment in favor of Defendants on this claim as Plaintiff

Gatti has not shown that these employment actions were causally connected to his protected activities. While he asserts various arguments in his deposition and in his summary judgment response that it was not proper for him to be investigated, the union steward he was assigned was not experienced enough, and the hearing officer who recommended the suspension was hired by Defendant Smith, Plaintiff Gatti fails to show or even raise a genuine issue of material fact that his union activity and/or political support of Defendant Smith's opponent had anything to do with the actions of which he complains.

Finally, Defendants move for summary judgment as to Plaintiff Gatti's claims that he was treated disparately than other employees for running over a battery charger and in having legal action brought against him by Defendant Smith in Trumbull County Common Pleas Court for the recovery of health insurance premiums. ECF Dkt. #56 at 61-63. Plaintiff Gatti testified that it was alleged that he ran over a battery charger when he was moving equipment but he was not charged with this until two-and-a-half months after the incident. ECF Dkt. #46-1 at 51. He indicated that he was awaiting a pre-disciplinary hearing on the matter and no corrective action had yet to be taken. *Id.*

The Court finds that Plaintiff Gatti has not met his burden of showing that this battery charger incident was sufficiently adverse or that it was causally connected to his union activity or position or his support of Defendant Smith's political opponent.

As to the civil lawsuit against him by Defendant Smith to recover health insurance premiums, Plaintiff Gatti explained at his deposition that while he was off of work for a significant period of time and collecting Worker's Compensation benefits, the prior Trumbull County Engineer sent him letters about paying his health insurance premiums and he told the prior Engineer that he could not afford to do so. ECF Dkt. #46-1 at 23-24. Plaintiff Gatti testified that the prior Engineer continued to keep him on healthcare insurance benefits for two and-a-half years until he returned to work with no discussion about it and the prior Engineer never told him if he had to pay back the premiums. *Id*. at 24-25. He stated that several letters were sent to him telling him how much he owed for the premiums and he then hired Attorney Engler to resolve the issue. *Id*. at 25-26. Plaintiff Gatti testified that Attorney Engler sent a

12

letter to resolve the issue and he received no response. *Id*. at 26. Plaintiff Gatti indicated that a year later, he was sued. *Id.* at 27. Plaintiff Gatti filed a counterclaim against Defendant Smith in that lawsuit alleging that Defendant Smith sued him to punish him for his political support of Defendant Smith's opponent and for attending the democratic party nomination of his sister-in-law. *Id*. at 27-28. Plaintiff Gatti testified that Defendant Smith saw him in 2008 at a downtown parade that he did not participate in but in which he probably had on a "DeChristofaro" shirt. *Id*. at 29. He also testified that he had a campaign sign in his yard. *Id*. He testified that he had half a dozen conversations with Defendant Smith in his life, he congratulated him on winning the election, and they had worked together previously in the office. *Id*. at 29-30. Plaintiff Gatti also indicated that Defendant Smith knew his sister-in-law through political friends and she had a brief conversation with him in which she indicated that he worked for Defendant Engineer's Office. *Id*. at 30-34.

The Court finds that a civil lawsuit could certainly constitute an adverse employment action. However, again, Plaintiff Gatti has failed to show a causal connection or a genuine issue of material fact between the civil lawsuit and his protected activities of union participation and politically supporting his sister-in-law and Defendant Smith's opponent. Plaintiff Gatti alleges that he was treated differently than another employee who had his health insurance premiums paid by the prior Engineer when that employee was on disability leave as he was required to pay back the health insurance premiums and the other employee was not required to pay back the health insurance premiums. ECF Dkt. #61 at 13-14. However, Defendant Smith notes that the official records of his office showed that the prior Engineer Office's attorney sent a letter to the attorney of the other employee and referenced a lawsuit and a settlement of $12,500.00 paid by the other employee in exchange for Defendant Engineer's Office not seeking further reimbursement of the money for reimbursement of health care premiums. *Id*. Defendants also point to Defendant Smith's testimony that the other employee and Plaintiff Gatti both had negotiations as to settling the reimbursement of the premiums, but Plaintiff Gatti's negotiations had failed. *Id*. at 14.

Plaintiff Gatti fails to rebut the evidence presented that Defendant Engineer's Office did

pursue reimbursement of health insurance premiums from the other employee. Moreover, Plaintiff Gatti has failed to show that his political support or union activity were motivating factors in the civil lawsuit against him for reimbursement of health insurance premiums.

For these reasons, the Court GRANTS summary judgment in favor of Defendants on all claims asserted by Plaintiff Gatti.

**4.   Employment Actions against Plaintiff Charnas**

Plaintiff Charnas cites to his active support of Defendant Smith's political opponent and contends that due to that association, he was suspended for taking rocks from a job site even though he had the approval of a supervisor present at the site. ECF Dkt. #59 at 10. He also cites his protected union activities and political support as motivating factors in Defendant Smith's termination of his employment. *Id.* Plaintiff Charnas complains that the excuse for firing him was because he did not have his driver's license even though the judge in his criminal case granted him "full employment related driving privileges." *Id.* at 11. Defendants move for summary judgment on Plaintiff Charnas' claims, asserting that the first employment action is time-barred, the termination of his employment was justified, and Plaintiff Charnas fails to show that the employment actions were unreasonable or related to any political or union affiliation or support.

The Court GRANTS summary judgment to Defendants as to Plaintiff Charnas' claims. As to his claim relating to taking rocks from the jobsite, the Court finds that this claim is barred by the applicable statute of limitations. As Defendants point out, Plaintiff Charnas testified that this action occurred in 2011 and Plaintiff Charnas was required to present this claim within two years. ECF Dkt. #61 at 7, citing ECF Dkt. #44-1 at 197; *see Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)(the statute of limitations for a civil rights lawsuit under 42 U.S.C. § 1983 is that provided by the State for personal-injury torts); *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989)(proper statute of limitations for §1983 actions in Ohio is two-year statute of limitations for bodily injury actions under Ohio Revised Code § 2305.10); *see also Jones v. Johnson*, No. 16-2192, – Fed. App'x –, 2017 WL 3726758, at *15 (6th Cir. Aug. 29, 2017) (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153

L.Ed.2d 106 (2002)("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Thus, this action is barred by the statute of limitations.

Plaintiff Charnas asserts that this claim can be presented in the instant case to provide background to illuminate that Defendant Smith's retaliatory motives continued into the statute of limitations period. ECF Dkt. #59 at 29, citing *Malone v. Lockheed Martin Corp*., 610 F.3d 16 (1st Cir. 2010) and *Smith v. Ashland, Inc*., 250 F.3d 1167 (8th Cir. 2001). However, even if this claim is considered, Plaintiff Charnas fails to establish a causal connection between it and his political support and union activity.

Plaintiff Charnas also asserts that the termination of his employment was in violation of his First Amendment rights of political association and support and his union activity. Plaintiff Charnas testified that he was pulled over by the police and taken to the station for a breathalyzer test in March of 2014, 45 minutes after he got off work, and while they later dropped the charge of driving under the influence, the officer who pulled him over at the scene took his physical driver's license and Plaintiff Charnas was told to come back to get his license from the bailiff at a later date, which he did. ECF Dkt. #44-1 at 20-24. Plaintiff Charnas further testified that he then got pulled over a few months later after he had two or three beers and the breathalyzer test showed that he was "a hair over" the legal limit. *Id*. at 25. He explained that he did lose his driver's license because he was over the legal limit. *Id.* However, Plaintiff Charnas testified that "[t]he judge kept looking around and moving papers. He says this doesn't make any sense. And he gave me full driving privileges." *Id.* Plaintiff Charnas testified that he was given paperwork showing that while his license was suspended, he was allowed driving privileges. *Id*. He indicated that he told the judge that he had a commercial driver's license and the judge says "this will be fine. He gave me work privileges," which Plaintiff Charnas believed included commercial driver's license privileges. *Id*. He testified that he then went to work and asked to take some vacation time and was refused such time and then terminated as Mr. Alberini, his Highway Superintendent, told him that the judge did not have the right to grant him commercial driving privileges. *Id*. at 25-26. He indicated that he grieved his termination of employment but

his grievance was denied. *Id.* at 26. Plaintiff Charnas posits that the hearing officer was biased against him because Defendant Smith testified that the particular hearing officer had never found in favor of an employee and a reasonable juror could dismiss the hearing officer as a "hired gun" because Defendant Smith was the one who hired him. ECF Dkt. #59 at 30-31.

Defendants move for summary judgment on this claim, asserting that Plaintiff Charnas was terminated from his employment because he lost his commercial driver's license, which he needed for his employment as a truck driver with Defendants. ECF Dkt. #61 at 7-8. They provide documentation from the Ohio Bureau of Motor Vehicles dated June 18, 2014 informing Plaintiff Charnas that he was unable to operate a commercial motor vehicle pursuant to Ohio law as even though he received a court order granting him limited driving privileges, that grant of driving privileges did not apply to commercial driving privileges. ECF Dkt. #61-5 at 8. They also present the findings of the hearing officer at the pre-disciplinary hearing who accepted testimony from Highway Superintendent Gregg Alberini Sr., who provided the court records relating to Plaintiff Charnas' license suspension, and the Ohio Bureau of Motor Vehicles records indicating the suspension of Plaintiff Charnas' commercial driver's license. *Id.* at 9-10. The hearing officer found that based upon the indefinite suspension of Plaintiff Charnas' commercial driver's license and the qualifications of Plaintiff Charnas' job which require a valid and non-suspended Ohio commercial driver's license, Plaintiff Charnas violated work rules and policies. *Id.* at 10-11. The hearing officer further recommended that Plaintiff Charnas' employment as a truck driver 2 be terminated based upon the indefinite commercial driver's license suspension and Plaintiff Charnas' prior violations which resulted in a 3-day suspension in 2011, a 15-day suspension reduced to a 10-day suspension in 2012, and a 30-day suspension in 2013. *Id.*

The Court GRANTS summary judgment in favor of Defendants as to this claim. As pointed out by Defendants, a primary duty of Plaintiff Charnas was to drive commercial vehicles, which he was prohibited by law from doing while his license was suspended. Plaintiff Charnas fails to challenge the findings, except to assert that the hearing officer was biased, for which he presents no support. Moreover, Plaintiff Charnas fails to establish that his political support of an opponent or his union activity were motivating factors in Defendant Smith's

termination of his employment.

**5.**        **Employment Actions against Plaintiff Stauffer**

Defendants also move for summary judgment as to Plaintiff Stauffer's claims against them, asserting that some of the alleged actions are not sufficiently adverse employment actions and Plaintiff Stauffer cannot otherwise establish the causal connection between his protected activities and the actions taken against him. ECF Dkt. #56 at 23-26. Plaintiff Stauffer testified that he was chief union steward and supported Defendant Smith's political opponent, both of which Defendant Smith knew. ECF Dkt. #48-1 at 21-23. Plaintiff Stauffer testified that in 2014, he was harassed on the job as he was assigned to the Cortland shop alone with two supervisors for four months when usually six workers were assigned there (ECF Dkt. #48-1 at 16-17). He testified that he was told that he was isolated so he could not speak to other union members. *Id.*

The Court finds that this action is not sufficiently adverse to chill a person from ordinary firmness from continuing to engage in the speech or conduct as Plaintiff presents no evidence of a loss of pay, demotion or any other negative impact as a result of being assigned to the Cortland location. Also, the Court has ruled that statements allegedly made by supervisors are inadmissible hearsay. Moreover, as Defendants point out, Plaintiff Stauffer conceded that he was not denied speaking to union members before or after work hours and he testified that he would not have spoken to other union members about union business during work hours even if they were at the Cortland shop with him. ECF Dkt. #56 at 24, citing ECF Dkt. #48-1 at 32-33. He also testified that neither of the supervisors who were with him at the Cortland location harassed him. *Id.*

Plaintiff Stauffer also complains that he had to pick up trash as his only job duty for one year, which was unprecedented. ECF Dkt. #48-1 at 16. He also contends that he was also unjustly disciplined for a broken wheel hub on a truck snowplow and for improperly plowing a road (ECF Dkt. #48-1 at 143-145) and for yelling at a vehicle driver (ECF Dkt. #48-1 at 205), and he had to weed whack in a snow storm (ECF Dkt. #48-1 at 17), and supervisors would excessively monitor his activities (ECF Dkt. #48-1 at 176). *Id.* He also testified that he was reprimanded for wanting to tape a pre-disciplinary hearing and he was passed over for

promotions.  ECF Dkt. #48-2 at 218.  Plaintiff Stauffer further testified that his termination of employment was questionable as well as he was misquoted by his supervisor when he was overheard talking to a co-worker who had accused him of making a threat.  ECF Dkt. #48-1 at 156-157.  Plaintiff Stauffer testified that his supervisor said that he referred to a pile of "bodies" upon which he would be standing, when he actually said that he would be standing on a pile of "people."  *Id*. at 164.  Plaintiff Stauffer explained that he was being facetious when he made this statement to his co-worker.  *Id.* at 179.

The Court finds that even if the complained of actions are sufficiently adverse employment actions, Plaintiff Stauffer has failed to establish a causal connection between each of them and his protected union activities and political association with and support of Defendant Smith's opponent.  Further, as to the termination of his employment, Defendants point out that an employer has an "honest belief" rule in which the employer can avoid a finding that its claimed nondiscriminatory reason was pretextual if the employer shows "its reasonable reliance on the particularized facts that were before it at the time the decision was made."  ECF Dkt. #61 at 9, quoting *Wright v. Murray Guard, Inc*. 455 F.3d 702, 708 (6th Cir. 2006).  Thus, the key finding is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Smith v. Chrysler Corp*., 155 F.3d 799, 807 (6th Cir. 1998).  In order to rebut this rule, the plaintiff must offer evidence of an error by the employer that is "too obvious to be unintentional."  *Id.*

Defendants point out that an investigation of the statement made by Plaintiff Stauffer was conducted by a third-party, Attorney John Pfau, who interviewed four people, including Plaintiff Stauffer.  ECF Dkt. #61 at 10, citing ECF Dkt. #48-2 at 37-42.  Written statements of the person to whom Plaintiff Stauffer made the statement and the supervisor who overheard the statement were provided to Attorney Pfau.  *Id.*  At the time of the investigation, Plaintiff Stauffer filed an affidavit indicating that he did not recall word for word what he said but it was something about the Cleveland Browns losing a lot of people, which he followed by saying that "after all these lawsuits are done there will be a lot less people around here."  *Id*. at 43.  In his deposition, however, Plaintiff Stauffer indicated that he did say that there would be a "pile of people" and he

would be on top because that is where Defendant Smith wanted him. ECF Dkt. #48-1 at 164. Based upon the interviews and statements before him, as well as Plaintiff Stauffer's lack of cooperation, Attorney Pfau concluded that Plaintiff Stauffer made the statement in front of a co-worker and his supervisor, and the statement was threatening of potential violence in the workplace. ECF Dkt. #48-2 at 42.

Without asserting more than that he was misquoted, Plaintiff Stauffer fails to show that the reason for his employment termination was pretextual or "too obvious to be unintentional." He fails to establish the his union activity or political support were motivating factors in the termination of his employment.

The Court finds the same with regard to Plaintiff Stauffer's pre-disciplinary hearings for his inadequate snow plowing or the broken wheel hub. Attorney Pfau was the hearing officer on the snow plow incident and took testimony from the Assistant Highway Superintendent, who indicated that Plaintiff Stauffer had been driving the route for four to five years and a problem arose in the sequence of the running of the route by Plaintiff Stauffer about which he was counseled before the instant incident. ECF Dkt. #48-2 at 29-30. Two days later, Plaintiff Stauffer's route was checked and it was in poor condition and he was then taken out of the truck, but was returned three days later and performed adequately. *Id.* at 30. The Assistant Highway Superintendent testified that a highway supervisor was on Plaintiff Stauffer's run on January 29, 2016 where a motor vehicle accident had occurred, and he observed that the roads were not properly treated on Plaintiff Stauffer's run. *Id.* Photographs were taken of the roads and it was observed that Plaintiff Stauffer had completed 80% of his run and had three-quarters of material left in his truck which indicated that it was not distributed as it should have been. *Id.* at 30-31. Words were exchanged between Plaintiff Stauffer and the supervisor and the supervisor was asked if he filed a harassment charge against Plaintiff Stauffer, to which the supervisor indicated that he did not but the employer did because it concerned Plaintiff Stauffer threatening to revoke the union membership of a foreman during an investigation which violated the harassment policy. *Id.* at 31.

Attorney Pfau as hearing officer concluded that based upon the evidence and the

19

employee work rules, policies and procedures manual, Plaintiff Stauffer violated the policy on inefficiency for failing to perform his job of snow and ice control even though he was familiar with the run, had experience with the run, and had been previously counseled about the run. ECF Dkt. #48-2 at 31. Plaintiff Stauffer was also found in violation of the neglect of duty policy as he left his worksite in an unsafe manner which resulted in a hazardous condition. *Id.*

While Plaintiff Stauffer challenges the objectivity of Attorney Pfau as investigator and hearing officer, he again provides no support for such a challenge or to even raise a genuine issue of material fact concerning objectivity. Moreover, Plaintiff Stauffer fails to show that this decision was not reasonably informed and considered, or that if was "too obvious to be unintentional." He fails to show any iota of a causal connection between his union activity or political support and this disciplinary matter.

Plaintiff Stauffer also had a pre-disciplinary hearing on the broken wheel hub, in which Attorney Pfau acted as hearing officer and considered testimony from the Highway Superintendent, Assistant Highway Superintendent, accident reconstructionist, Mr. Laukhart, the Director of Finance and Personnel, and Plaintiff Stauffer. ECF Dkt. #48-2 at 53-55. Based upon the testimony and the conclusions of the accident reconstructionist, Attorney Pfau found that Plaintiff Stauffer failed to note the problems that the reconstructionist concluded should have been readily observed by him. *Id.* at 55-56. Attorney Pfau found that Plaintiff Stauffer's conduct was not intentional, but violated the employee manual as it constituted inefficiency/incompetence, misfeasance, malfeasance and/or nonfeasance, and neglect of duty in failing to follow workplace safety rules. *Id.* at 56. Attorney Pfau recommended a three-day suspension with pay. *Id.*

Again, while Plaintiff Stauffer challenges Attorney Pfau's objectivity, he provides no support for such a challenge. Moreover, Plaintiff Stauffer fails to show that this hearing decision was not reasonable or uninformed, or that it was "too obvious to be unintentional." He also fails to establish a causal connection between it and his protected activities. Accordingly, the Court GRANTS summary judgment in Defendants' favor as to Plaintiff Stauffer's claims of termination of employment and disciplinary actions taken in violation of his First Amendment to

the United States Constitution.

The same rationale applies to Plaintiff Stauffer's complaints of being counseled as to a citizen complaint and his taping of a pre-disciplinary hearing. ECF Dkt. #59 at 11-14. Plaintiff Stauffer was counseled for a citizen telephone call in which it was reported that an employee in a county truck almost ran her off of the road and yelled at her to stay on her side of the road. ECF Dkt. #48-2 at 58. The citizen identified the location of the incident and it was determined that it was Plaintiff Stauffer's route and truck. *Id*. The service request form indicated that the driver was Plaintiff Stauffer and he was counseled. *Id.* Plaintiff Stauffer denied that this incident even occurred. The other incident involved Plaintiff Stauffer taping a pre-disciplinary hearing without prior consent, which was a violation of the employee manual. ECF Dkt. #48-4 at 2. He was reprimanded for this violation. *Id*. Even if the counseling and reprimands constituted sufficient adverse employment actions, Plaintiff Stauffer fails to show that they were not informed and considered decisions or that they were "too obvious to be unintentional." He also fails to show a causal connection between his union activity and political association and these matters.

For the above reasons, the Court GRANTS Defendants' motion for summary judgment and dismisses all of Plaintiff Stauffer's claims with prejudice.

### 6. Employment Actions against Plaintiff Davis

Plaintiff Davis complains of on-the-job harassment and unwarranted disciplinary actions against him. ECF Dkt. #8 at 4. He testified that he is a hose man who still works for Defendants, but he alleges that he was harassed because he associated with Defendant Smith's political opponent and Plaintiff Stauffer, and he was previously a union steward and was still in the union. ECF Dkt. #45-1 at 8, 11. He related that he was targeted by supervisors as they would not let him or his crew leave early or take breaks and he was assigned to picking up trash. *Id*. at 12-13. He assumed that the supervisors did not make such decisions on their own and Defendant Smith was involved in the decisions "[b]ecause anyone in that position would at least have to take authority from someone else higher up." *Id*. at 15. He also complained that he was treated differently when he went out on a job and the foreman left the job, as he was supposed to be second in command but was made to be a flagman instead, although he was unsure who gave

this order. *Id.* at 15-16. He also alleges that he was disciplined unfairly. *Id.* at 54.

Defendants move for summary judgment on Plaintiff Davis' claims, asserting that he lacks admissible evidence to support his claims of retaliation for being in the union and supporting Defendant Smith's political opponent. ECF Dkt. #56 at 26. They contend that double hearsay and inadmissible hearsay bar this Court from considering Plaintiff Davis' evidence of retaliation consisting of Plaintiff Stauffer telling him that supervisors Stassinis and Klejka told Plaintiff Stauffer that Plaintiff Davis "should watch his back" and Plaintiff Davis was "next on the list." *Id.* at 26-27. The Court agrees that these statements are inadmissible hearsay and double hearsay because, as held above, statements made by the supervisors that are not within the scope of their job duties and responsibilities constitute inadmissible hearsay under Rule 801(d)(2)(D). Moreover, these statements are double hearsay as Plaintiff Davis indicated that Plaintiff Stauffer told him what the supervisors told Plaintiff Stauffer.

Defendants also assert that Plaintiff Davis relies on additional inadmissible hearsay to support his claims of harassment that he and his crews were required to stay out longer and were not allowed to take breaks. ECF Dkt. #56 at 27. Defendants point to Plaintiff Davis' testimony that the superintendent at the time told him that he had to leave his crews out longer, the superintendent required supervisors under him not to allow Plaintiff Davis' crew to take any breaks, and the superintendent told supervisors to "keep their eye" on Plaintiff Davis. *Id.*, citing ECF Dkt. #45-1. Defendants note that Plaintiff Davis admitted that the only reason he "knows" that the superintendent at the time told other supervisors to watch him was because those supervisors told him this, which is inadmissible hearsay. The Court again agrees that the supervisors' statements to Plaintiff Davis are inadmissible hearsay.

Defendants also assert that the statements allegedly made to Plaintiff Davis by Mr. Ford and Mr. Monroe are inadmissible hearsay and nevertheless made no specific reference to Defendant Smith or to Plaintiff Davis' protected activities. ECF Dkt. #61 at 12. Plaintiff Davis testified that Mr. Ford, a laborer and not a supervisor, told him to watch himself and commented that he did not understand why Plaintiff Davis was hose man one day and why he could not get his number one hose man on the job. *Id.* Plaintiff Davis further testified that Mr. Ford also

stated that he did not know what kind of games "they're playing, but just play the game." *Id.*
Mr. Ford's statements, even if admissible, fail to identify who "they" are and fail to raise an
issue of material fact that not assigning Plaintiff Davis to be hose man was because of Plaintiff
Davis' protected activities or that such assignment was ultimately made by Defendant Smith.

As to Mr. Monroe's statements to Plaintiff Davis that Plaintiff Davis was a good worker,
"they had it out" for Plaintiff Davis, and he should "keep his nose clean," Defendants note that
Mr. Monroe also failed to identify who "they" and failed to refer to Defendant Smith as the one
ultimately keeping Plaintiff Davis from the hose man position or that such actions were due to
his protected activities. ECF Dkt. #56 at 27. The Court agrees that Plaintiff Davis has not
established that "they" were Defendant Smith and his administration or that "they" did this
because of Plaintiff Davis' political associations and support and his union activity.

In addition, as Defendants point out, Plaintiff Davis indicated that his only reason for
believing that Defendant Smith was involved in the instructions given by the superintendent at
the time was because he "figured [Smith] should oversee everybody that's underneath him" even
though he admitted that no one told him that Defendant Smith was even aware of the
superintendent's instructions relating to Plaintiff Davis. ECF Dkt. #56 at 27, citing ECF Dkt.
#45-1 at 14-15. Such speculative testimony is insufficient to establish a genuine issue of fact as
to a causal connection between Plaintiff Davis' protected activities and the employment actions.

As to his assignment as a flagman when the foreman left even though he was second in
charge, Plaintiff Davis provides support again through inadmissible hearsay as he testified that
he was told by supervisors that this is what the superintendent at the time wanted. ECF Dkt.
#45-1 at 15-17. Plaintiff Davis also testified that he did not know if those orders ultimately came
from Defendant Smith, but he believed that they did because he was head of the office. *Id.* at 17.

Due to Plaintiff Davis' reliance upon inadmissible hearsay, double hearsay, and
otherwise merely speculative testimony without support and a lack of establishment of causal
connection between the actions taken against him and Defendant Smith, and a lack of causal
connection between his protected activities and the actions taken in his employment, the Court
GRANTS summary judgment in favor of Defendants on these claims.

Finally, Defendants move for summary judgment on Plaintiff Davis' claim of retaliatory discipline taken against him. ECF Dkt. #61 at 12. They contend that the two-year statute of limitations bars Plaintiff Davis from presenting as retaliatory actions the disciplinary actions against him in 2013 for damaging a battery box and going through a citizen's mail and a 2012 discipline for not knowing the location of a cold patch truck. *Id*. Defendants asserts that the complaint in this case was filed on May 31, 2016 and therefore more than two years have passed since those disciplines, thereby barring them from the instant case. *Id*. at 12-13.

The Court GRANTS summary judgment as to Plaintiff Davis' 2012 and 2013 disciplinary actions taken against him because they are barred by the two-year statute of limitations for § 1983 civil rights actions. *See Wallace,* 549 U.S. at 387 (statute of limitations for a civil rights lawsuit under 42 U.S.C. § 1983 is that provided by the State for personal-injury torts); *Browning*, 869 F.2d at 992(proper statute of limitations for §1983 actions in Ohio is two-year statute of limitations for bodily injury actions under Ohio Revised Code § 2305.10); *see also Jones*, 2017 WL 3726758, at *15 (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

There are three additional disciplinary actions that are not barred by the statute of limitations. At a pre-disciplinary hearing held on March 27, 2015 with Attorney Pfau as hearing officer, Attorney Pfau's findings indicated that Plaintiff Davis was facing charges of insubordination for refusing to comply with a foreman's orders on February 13, 2015 to move a truck and inefficiency/incompetence for arriving at a jobsite in an hour and a half on February 21, 2015 when it only took twenty minutes to travel to get to the site. ECF Dkt. #45-2 at 23. Attorney Pfau accepted the testimony of Plaintiff Davis, Mr. Stassinis, and an Assistant Highway Superintendent who investigated the insubordination incident. *Id*. at 24-25. Based upon the testimony and employee manual, as well as the evidence establishing that Plaintiff Davis was in charge of a crew that day as a hose man, which was consistent with his job description as a hose man, it was found that Plaintiff Davis was required to obey the orders of Mr. Stassinis, who was a Foreman 2, which is considered to be a supervisor in the Engineer Office hierarchy. *Id*. at 25.

Attorney Pfau also accepted Plaintiff Davis' testimony that he did not follow Mr. Stassinis' requests to move the truck or to top it off with cold patch. *Id*. at 24-25. He found Plaintiff Davis to be insubordinate for his refusal to comply with a supervisor's order. *Id*. at 26.

As to the inefficiency/incompetence charge, Attorney Pfau accepted the testimony of Plaintiff Davis, who testified that on February 21, 2015, his supervisor Bill Sparks gave him an assignment to replace a stop sign and it took him from 1:43 p.m. to 3:07 p.m. to drive to the intersection where the stop sign was located. ECF Dkt. #45-2 at 26-27. Plaintiff Davis also testified that it took him only twenty minutes to get back to the Warren shop from the location of the stop sign and Mr. Sparks indicated in a written statement that he gave Plaintiff Davis proper directions to the downed stop sign. *Id*. at 27. Based on the evidence presented, Attorney Pfau found that Plaintiff Davis inefficiently, incompetently and ineffectively used man hours and equipment by taking one hour and twenty-four minutes to travel to an area that he should have been familiar with and for which he received proper directions and could have gotten proper directions from other means. *Id*.

Attorney Pfau as hearing officer recommended that Plaintiff Davis' employment be terminated based upon the two disciplinary offenses before him and Plaintiff Davis' prior 30-day working suspension. ECF Dkt. #45-2 at 27.

On July 16, 2015, Plaintiff Davis, the union and Defendant Engineer's Office entered into a last chance agreement whereby Defendant Engineer's Office agreed to reinstate Plaintiff Davis to employment and waived all discipline against him for the pending offenses and Plaintiff Davis forewent arbitration and agreed that if he violated the last chance agreement, his employment would be terminated. ECF Dkt. #45-2 at 28. The conditions that Plaintiff Davis agreed to abide by included not committing any acts of insubordination or inefficiency/incompetence, complying with all proper orders of management and union foreman personnel, and returning to work and waiving all claims for back pay or back benefits. *Id*.

As with Plaintiff Stauffer, Defendants assert that as to the termination of Plaintiff Davis' employment, an employer has an "honest belief" rule in which the employer can avoid a finding that its claimed nondiscriminatory reason was pretextual if the employer shows "its reasonable

reliance on the particularized facts that were before it at the time the decision was made." ECF Dkt. #61 at 12; *Wright*, 455 F.3d at 708. The key finding is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807. In order to rebut this rule, the plaintiff must offer evidence of an error by the employer that is "too obvious to be unintentional." *Id.*

The Court finds that Plaintiff Davis has not provided any evidence that the discipline he received was "too obvious to be unintentional," as it was a decision based upon the findings of Attorney Pfau as hearing officer, who took testimony and received evidence, which establishes that the decision was reasonably informed and considered. Moreover, Plaintiff Davis fails to raise genuine issues of material fact that these disciplinary hearings or his termination of employment was causally connected to his political association or support or his union activities. Consequently, the Court GRANTS summary judgment in favor of Defendants as to Plaintiff Davis' claims that the disciplinary actions taken against him were in retaliation of his exercise of his First Amendment rights.

> ### 7. **Employment Actions against Plaintiff Loomis**

Plaintiff Loomis explains that he is still employed with Defendant Engineer's Office, he began his employment in 1998, he is currently the union president, and since 2009-2010, he has held union offices that represent hourly paid employees. ECF Dkt. #59 at 6-7.

Besides the assertions that he was told he was on the "hit list" and should watch his back, which the Court has held are inadmissible hearsay, Plaintiff Loomis complains that he was assigned to pick up trash, which he perceived as a "bad job," and he was subjected to excessive supervisory attention while performing this menial duty. ECF Dkt. #59 at 8-9. Defendants move for summary judgment as to these claims, asserting that Plaintiff Loomis cannot show that the picking up of trash and having supervisors monitor him were because he politically supported Defendant Smith's opponent or because he was in the union. ECF Dkt. #61 at 5.

The Court finds that even if the employment actions that Plaintiff Loomis complains of were sufficiently adverse, he has not shown that Defendant Smith knew of, was involved in or had anything to do with assigning his duties. Further, Plaintiff Loomis has not shown a

sufficient causal connection between these employment actions and his union positions and political support of Defendant Smith's opponent.

Plaintiff Loomis also asserts that he was at most only minimally disciplined since he started his employment with the Engineer's Office, but was disciplined twice under Defendant Smith for two questionable circumstances. ECF Dkt. #59 at 8-10. Plaintiff Loomis cites to two personal cell phone policy violations that he incurred in 2015. *Id.* Again, however, the Court finds that Plaintiff Loomis has not raised a genuine issue of material fact of a casual connection between the violations of the personal cell phone policy and his protected activities. Moreover, as Plaintiff Loomis himself admitted, one of the violations is still awaiting arbitration. *Id.* Consequently, the Court GRANTS summary judgment in favor of Defendants as to Plaintiff Loomis' claims against them.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment

(ECF Dkt. #56) and DISMISSES Plaintiffs' second amended complaint in its entirety WITH PREJUDICE.

IT IS SO ORDERED.


Dated: January 18, 2018                                    _____/s/George J. Limbert_____
                                                           GEORGE J. LIMBERT
                                                           United States Magistrate Judge